IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| GLENN BLANDFORD, VICTORIA BLANDFORD, AND TERMINAL PERFORMANCE ASSOCIATES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>B. MATTHEW MCCLAFFERTY, MAC PRIVATE EQUITY, INC. AND MPE CLEARING & HOLDINGS, INC.,<br><br>Defendants. | Case No. 3:24-cv-0023 |

**APPEARANCES:**

MICHAEL L. SHEESLEY, ESQ.
Michael L. Sheesley LLC
San Juan, Puerto Rico
    *For Plaintiffs Glenn Blandford, Victoria Blandford, and Terminal Performance Associates, LLC*

CHRISTOPHER ALLEN KROBLIN, ESQ.
MARJORIE B. WHALEN, ESQ.
Kellerhals Ferguson Kroblin, PLLC
St. Thomas, U.S. Virgin Islands
    *For Defendants B. Matthew McClafferty, MAC Private Equity, Inc., and MPE Clearing & Holdings, Inc.*

## MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge.**

    **BEFORE THE COURT** is Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction, (ECF No. 68), filed on December 13, 2024. Plaintiffs Glenn Blandford, Victoria Blandford, and Terminal Performance Associates, LLC, ("Plaintiffs") seek to enjoin Defendants B. Matthew McClafferty, Mac Private Equity, Inc. and MPE Clearing & Holdings, Inc. ("Defendants") "from disposing of any assets, money, property, stock,

*Blandford et al. v. McClafferty et al.*
Case No. 3:24-cv-00023
Memorandum Opinion
Page 2 of 10

membership interests, and/or ownership interest in any way." ECF No. 68 at 1. Defendants did not file a response. For reasons discussed below, the Court will deny Plaintiffs' motion.

## I. BACKGROUND

This case centers primarily on purportedly failed obligations concerning promissory notes and lending agreements. Plaintiffs allege that Defendants are involved in a "Ponzi Scheme"[1] and have purposely misled Plaintiffs with hollow attempts to resolve the parties' disputes.

Defendant MPE Clearing & Holdings, Inc. is a U.S. Virgin Islands corporation and Defendant Mac Private Equity, Inc, is a Delaware corporation. ECF No. 11 ¶¶4, 5; ECF No. 67 ¶¶ 5, 6. Plaintiff Glenn Blandford is a resident of Virginia and Plaintiff Victoria Blandford is a resident of Florida. ECF No. 67 ¶1, 2. On March 15, 2023, Defendant B. Matthew McCafferty, a U.S. Virgin Islands resident and president of Mac Private Equity, Inc., signed a promissory note for $25,000 with Victoria Blandford on behalf of Mac Private Equity, Inc. *See generally* ECF No. 1-1. The note provides for a flat interest rate of 25% and repayment in the sum of $31,375.00 on the 90th day following the transfer of the principal sum. ECF No. 1-1 ¶¶ 1, 2. It also entitles Blandford to 15% of "all profits derived from the utilization of the funds." ECF 1-1 ¶3; ECF 11 ¶21. In addition, the note provides for two ninety-day extension options at the same interest rate. In June 2023, notice was given to Blandford that the option would be exercised. ECF 1-1, ¶12; ECF 1-3.

---

[1] Black's Law Dictionary defines Ponzi scheme as a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usually without any operation or revenue-producing activity other than the continual raising of new funds. This scheme takes its name from Charles Ponzi, who in the late 1920s was convicted for fraudulent schemes he conducted in Boston." Ponzi Scheme, Black's Law Dictionary (12th ed. 2024).

On April 5, 2023, Victoria Blandford signed a second promissory note for $30,000 with McClafferty as president of Mac Private Equity, Inc. *See generally* ECF No. 1-2. Blandford asserts that part of these funds was provided by codefendants Glenn Blandford and Terminal Performance Associates, LLC. ECF No. 67 ¶27. For the most part, this second note contained the same provisions as the first note with an increased interest rate of 36.25%. *See* ECF No. 1-2

Plaintiffs contend that all principal and interest under both notes were due in December 2023, and that despite repeated demands, Plaintiffs have not been paid. ECF No. 67 ¶¶35-37. According to Plaintiffs, McClafferty continually made promises of payment from January through April 2024 and consistently failed to follow through. *Id*. at ¶44. Plaintiffs allege that McClafferty claimed to have sent payment to Plaintiffs, but intentionally sent it "to an incorrect and incomplete address and then placed stop payment on the check" with no genuine intent of ever making the actual payment. *Id*. at ¶43

On April 12, 2024, Plaintiffs commenced this action for damages against Defendants alleging seven causes of action, namely, breach of agreement, breach of contract, debt, fraudulent misrepresentation, breach of covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress. ECF No. 1. On November 25, 2024, Plaintiffs filed their first amended complaint alleging the same seven causes of action and adding Terminal Performance Associates, LLC as a Plaintiff. *See* ECF No. 67.

Plaintiffs assert that the parties "preliminarily negotiated a settlement agreement . . . which Defendants refused to execute." ECF No. 68 at 7. According to Plaintiffs:

> It was agreed that the parties would file a first amended complaint (which they did on November 25, 2024) and the Defendants would sign a settlement agreement and consent judgment. The Defendants never executed the

> settlement agreement, although the Defendants asserted in an email (Exhibit 3) that the consent judgment was signed and sent to Attorney Kroblin. The consent judgment is in the total amount of $125,000.00. The first payment under the settlement agreement is to be due on January 3, 2025. There is no reason to believe that the Defendants will make a timely payment.

(*Id.* at 9.)

Plaintiffs allege Defendants are currently embroiled in at least five other lawsuits in Virgin Islands Courts that carry similar causes of actions against Defendants, and that Defendants "maintain a completely fraudulent façade" to operate their business activities. ECF No. 68 at 2. Plaintiffs maintain that Defendants do not dispute owing money to Plaintiffs, and that Defendants have "thumbed their noses at the court and the justice system." ECF No. 68 at 2, 3.

Plaintiffs seek to freeze Defendants' "assets and property until their creditors are made whole." *Id.* at 2. Alternatively, Plaintiffs petition the Court to issue an Order requiring Defendants to make a monetary deposit into the Court's registry. *Id.* at 11.

## II.     LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of temporary restraining orders and preliminary injunctions. *See* Fed. R. Civ. P. 65. The standard for granting a temporary restraining order under Rule 65 is the same as that for issuing a preliminary injunction. *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012).

"[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (citation and quotation omitted)). Courts

apply a four-factor test. *See Kos Pharms.* at 708. Specifically, a movant must demonstrate: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that public interest favors such relief. *Id.* (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999). "The first and second factors are 'gateway factors' that the movant must establish." *Boynes v. Limetree Bay Ventures, LLC*, Civil Action No. 2021-0253, 2023 U.S. Dist. LEXIS 74266, at *10 (D.V.I. Apr. 28, 2023) aff'd, 110 F.4th 604 (3d Cir. 2024) (citing *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 103 (3d Cir. 2022). If these two gateway factors are satisfied, a court then determines whether "all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id; see also Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) ("The first two factors are the 'most critical.' If both are present, a court then balances all four factors.") (citation omitted).

### III.    DISCUSSION

Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *AT&T v. Winback & Conserve Program,* 42 F.3d 1421, 1426-27 (3d Cir.1994) (citations omitted).

> [A] movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief. In assessing these factors, Judge

*Blandford et al. v. McClafferty et al.*
Case No. 3:24-cv-00023
Memorandum Opinion
Page 6 of 10

> Easterbrook's observation bears repeating: "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."

*Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

At this stage, Plaintiffs fail to demonstrate both a likelihood of success on the merits and a probability of irreparable harm.

### A. Likelihood of Success on the Merits

Plaintiffs do not argue or address likelihood of success on the merits of any of their seven causes of action. Plaintiffs assert only that the parties "preliminarily negotiated a settlement agreement," which Defendants refused to execute.[2] *See* ECF 68-2 ¶11. Plaintiffs

---

[2] By offering compromise offers and settlement negotiations as evidence, Plaintiffs draw close to the no-go zone as to admissibility pursuant to Federal Rule of Evidence 408. The policy behind Rule 408 is to encourage the compromise and settlement of disputes. Fed. R. Evid. 408. Notwithstanding, the Court notes that such evidence may be introduced within proper parameters. *See Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 266 (E.D.N.Y. 2021) *("*Where parties' prior negotiations resulted in an agreement which was subsequently repudiated by [a defendant] ... permitting [that defendant] to exclude the settlement evidence on Rule 408 grounds would flout the policy of promoting compromises. Otherwise, Rule 408 would shield a party from liability for breaching an agreement entered during settlement negotiations, disincentivizing settlement altogether.") (citations and internal quotation marks omitted); *see also Sw. Nurseries, LLC v. Florists Mut. Ins., Inc.,* 266 F. Supp. 2d 1253 (D. Colo. 2003) ("[Rule 408] . . . does not impose absolute ban on admission of statements made during settlement negotiations, e.g., evidence of settlement offers may be admissible to challenge claim of undue delay, to prove defendant's knowledge and intent, or for purposes of impeachment or rebuttal."); *Martin v. Finley*, 349 F. Supp. 3d 391 (M.D. Pa. 2018), *on reconsideration,* No. 3:15-CV-1620, 2019 WL 1473421 (M.D. Pa. Apr. 3, 2019) (finding settlement negotiations between the chairman of the board of directors of a corporation and its shareholders— with respect to chairman's resignation during criminal investigation into his alleged misuse of corporate funds— were admissible in chairman's abuse of process action against shareholders since the crux of the chairman's claim was that shareholders improperly conducted and used settlement talks and offers as unlawful threats against him); *Stainton v. Tarantino*, 637 F. Supp. 1051 (E.D. Pa. 1986) (finding that an offer letter from plaintiff partner to defendant managing partner in which the plaintiff offered to sell his interest in three of the partnerships in question to the defendant was not barred by Rule 408; rather, the document was admissible to impeach plaintiff's testimony as to material fact of how many of his partnership interests he was interested in selling at the time in question); *Larson Mfg. Co. of S. Dakota v. Connecticut Greenstar, Inc.,* 929 F. Supp. 2d 924 (D.S.D. 2013) (finding evidence relating to parties' efforts to resolve their dispute were admissible under [Rule 408] to show that seller made a fraudulent statement— that it would assume at least partial responsibility for alleged defects—upon which buyers relied when it ordered more door closers from seller).

rely on an unsigned consent judgment and counsel's declaration as supporting evidence, which is insufficient. *See* ECF Nos. 68-1 and 69-2. This factor weighs against injunctive relief.

### B. Irreparable Harm

"In order to obtain an ex parte restraining order, the applicant must show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Section 2951 Temporary Restraining Orders—In General, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.). A plaintiff "must demonstrate that in the absence of a preliminary injunction, 'the [plaintiff] is likely to suffer irreparable harm before a decision on the merits can be rendered.'" *Winter v. NRDC, Inc.,* 555 U.S. 7, 22, (2008) (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)). A demonstration of irreparable injury by the party seeking relief is an essential prerequisite to a temporary restraining order or preliminary injunction; the movant "must show that, without a preliminary injunction, they will more likely than not suffer irreparable injury while proceedings are pending." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 204 (3d Cir. 2024). "The law ... is clear in this Circuit: In order to demonstrate irreparable harm, the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary [relief] must be the only way of protecting the plaintiff from harm." *Siemens United States Holdings Inc. v. Geisenberger*, 17 F.4th 393, 407 (3d Cir. 2021) (internal quotation marks and citation omitted).

To satisfy their burden, Plaintiffs present unverified assertions that Defendants will attempt to flee the U.S. Virgin Islands, and that Defendants may not be able to satisfy what

*Blandford et al. v. McClafferty et al.*
Case No. 3:24-cv-00023
Memorandum Opinion
Page 8 of 10

Plaintiffs allege is owed to them. ECF No. 2 ¶¶15, 16. Plaintiffs argue that Defendants are currently embroiled in at least five other lawsuits in Virgin Islands Courts with similar causes of actions. Plaintiffs also contend that Defendants have "repeatedly refused and/or failed to pay their debts when due," "engaged in a 'shell game' of bank accounts," and "threatened bankruptcy."[3] ECF 68 at 9, 10.

Assertions, anticipatory risks, and the introduction of unrelated cases do not meet the bar for Plaintiffs' burden here. It is not enough simply to assert that defendants will take the opportunity for deceptive conduct. The movant must *show* that the adverse party is likely to do so. *See First Tech. Safety Sys. v. Depinet*, 11 F.3d 641, 652 (6th Cir. 1993) (finding it inappropriate to consider assertions against defendants because there had been no determination as to the accuracy of those assertions); *see also ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 225 (3d Cir.1987) ("A risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'") (citation omitted).

Courts recognize that "[s]ometimes, harm threatens to moot a case, as when one party's conduct could destroy the property under dispute, kill the other party, or drive it into bankruptcy, for otherwise a favorable final judgment might well be useless.'" *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 201 (3d Cir. 2024) (citation omitted). And there is no question that a court may grant a preliminary injunction to prevent the dissipation of assets that would satisfy a judgment. *See Hoxworth v. Blinder,*

---

[3] Plaintiffs also point out that Mac Private Equity's website states that it is in pending EDC status, but that The Virgin Islands Economic Development Authority (VIEDA) issued a press release stating that the representation on Mac Private Equity's website regarding EDC status "is false and misleading. Based on EDC records, neither Mac Private Equity Inc. nor MPE Clearing & Holdings, Inc. has applied for tax incentives and neither has been a beneficiary of the EDC Tax Incentive Program." ECF 67-5; EFC 67 ¶¶49-51.

*Robinson & Co.*, 903 F.2d 186, 198 (3d Cir. 1990). Plaintiffs provide plenty of case law on this point. To obtain such relief, however, "the plaintiff must show not only that it is likely to become entitled to the encumbered funds upon final judgment, but also that without the preliminary injunction, the plaintiff will probably be unable to recover those funds." *Jacobson v. Kim (In re Lev),* Nos. 05-35847 (DHS), 08-02980 (DHS), 2009 Bankr. LEXIS 997, at *12 (Bankr. D.N.J. Mar. 31, 2009) (*citing Hoxworth* at 197); s*ee also Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996) (holding that a court may find that a party seeking an asset freeze to preserve a money judgment may demonstrate irreparable injury by *showing that the freeze is necessary* to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation.) (emphasis added).

In the cases Plaintiffs rely upon, movants provided significant and sufficient verified evidence that met their burden before the court.[4] Here, Plaintiffs have no court judgment in

---

[4] For example, in *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205 (3d Cir. 1990), the district court found that the irreparable injury showing was met by plaintiffs' evidence of substantial transfers of assets "beyond the power of this court," and of defendant's escalating financial difficulties. Therefore, the district court reasoned, "failure to grant the injunction may leave the injured plaintiffs and the class without a remedy or with a judgment that has no more funds." In *PNY Techs., Inc. v. Salhi*, Civil Action No. 12-4916, 2016 U.S. Dist. LEXIS 105956, at *2-3 (D.N.J. Aug. 10, 2016, evidence showed that the defendant continued to relocate to various residences in California as well as between the United States and Dubai, giving reason to suspect he was transferring his assets so they could not be reached to enforce a judgment; defendant could not give the Court an answer as to a single address where he resided; defendant represented to the Court that he did not have the funds to pay a potential judgment and movant identified numerous pieces of evidence indicating that defendant actually did have sufficient funds—or had recently sold—valuable assets. In *Prosser*, No. BR 2006-30009, 2017 WL 5614901, at *9 (D.V.I. Nov. 20, 2017), defendants were already in bankruptcy and had previously violated court orders prohibiting the sale of assets. *See also Juul Labs, Inc. v. 4X PODS*, 439 F. Supp. 3d 341, 347 (D.N.J. 2020) (finding evidence of irreparable harm where a number of documents produced in discovery included Skype messages in which defendants expressed in no uncertain terms that they would never pay any judgment that might ultimately be entered in the action).

*Blandford et al. v. McClafferty et al.*
Case No. 3:24-cv-00023
Memorandum Opinion
Page 10 of 10

hand, and at this juncture, the Court is not convinced that Plaintiffs will not be able to recover funds —without preliminary relief —if awarded.

Although Plaintiffs legitimately call into question what appears to be a pattern of behavior for dodging financial responsibility and accountability on behalf of Defendants, the Court cannot issue a temporary restraining order or preliminary injunction without clear evidence of imminent, irreparable harm to the Plaintiffs. Plaintiffs fail to make a clear showing that they will more likely than not suffer irreparable injury while proceedings are pending or that any injury cannot be remedied monetarily. Accordingly, the Court finds this factor weighs against preliminary relief.

### C. Balance of Equities and Public Interest

Because Plaintiffs fail to adequately address likelihood of success on the merits or demonstrate that they will suffer irreparable harm absent preliminary relief, the Court need not address balancing of equities or public interest—the two factors remaining in the analysis for granting such relief.

### IV. CONCLUSION

This Court does not take Plaintiffs' concerns lightly; however, anticipatory preliminary relief is not permitted. The record before the Court does not meet the standard necessary for the "extraordinary remedy" of temporary restraining order or preliminary injunction. Accordingly, Plaintiffs' request for preliminary injunctive relief will be denied. An appropriate Order follows.

**Dated:** February 24, 2025                    */s/ Robert A. Molloy*
                                    **ROBERT A. MOLLOY**
                                    **Chief Judge**